## BARRETT v. BARRETT.

A husband who leaves the family home, his wife and children remaining, and who never offers to return nor invites the wife to join him at any other place, cannot charge his wife with willful desertion, within Rev. Civ. Code, § 70, defining willful desertion as the voluntary separation of one of the married parties from the other with intent to desert, etc., unless the wife's conduct justified the husband's departure.

A husband, who leaves the family home merely because the wife declared that she would not live with him if he continued in the saloon business, cannot charge the wife with willful desertion, under Rev. Civ. Code, § 70, subsec. 3, defining what will justify a spouse in leaving the family dwelling without being chargeable with desertion, but which will charge the other spouse with desertion, as departure caused by threats of bodily harm, etc.; the opinion of the wife on the subject of the saloon business being entitled to as much consideration as the opinion of the husband, for section 94 provides that husband and wife contract toward each other obligations of mutual respect, etc.

(Opinion filed, Nov. 29, 1905.)

Appeal from Circuit Court, Minnehaha. Hon. JOSEPH W. JONES, Judge.

Action by George W. Barrett against Minerva E. Barrett. From a judgment for plaintiff, defendant appeals. Reversed.

*Aikens & Judge* and *Orr & Rodabaugh,* for appellant. *Bates & Parliman,* for respondent.

HANEY, J. This appeal is from a judgment decreeing a divorce and an order denying defendant's application for a new trial. The parties were married May 8, 1865. As to the cause for dissolving the marriage the court below found, in the language of the complaint, as follows: "That in the month of November, 1885, the said defendant, disregarding the solemnity of her marriage vows, willfully and without cause deserted and abandoned this plaintiff, and did live separate and apart from him without any sufficient cause or reason, against his will and without his consent. That in November, 1885, the said plaintiff and defendant were living together as husband and wife at Ravenna, Ohio, and that the said defendant drove the plaintiff from his home and from her, and refused to allow the plaintiff to return to his home, and the said defendant absolutely refused to cohabit with the plaintiff as husband and wife without any cause or provocation. That the plaintiff and defendant have not lived and cohabited together as husband and wife since November, 1885, the date the defendant deserted the plaintiff."

It is contended that the evidence is insufficient to sustain the decision. Concerning the alleged desertion, the plaintiff's testimony is substantially as follows: "The first trouble I had with my wife was when she told me if I went into the saloon business again she would break up my business. I went home one night, and she told me that she would not live with a saloon keeper any longer. That was in November, 1885. She said, if I insisted on running a saloon for a living, that I could not come home, and that she wouldn't live with me. I said: 'You don't mean it?' She said: 'Yes.' I said: 'What are you going to do?' She said she could take care of herself and the children. She said she would not live with a man who was running a saloon; that she despised a man who took a drink of whisky. I said: 'If that is the case we had better quit.' As soon as I could sell out my place I left and went to Cleveland. She removed to Cleveland in 1886. She came to the place where I was working and asked me to help her hunt up a house. I told her I would not do it. Phelps came to me at her request and wanted some money for her. I told him I didn't think I ought to put up money for a family that had turned me out of doors. I said:

'I will go there and board, and pay what other boarders pay.' I went to see her, and told her I was willing to come and board. She said: 'If you come here, there are other good boarders that will leave, and I can't have that.' I said: 'All right then.' Subsequent to November, 1885, after my wife refused to live with me, I made no provision for the family or for her. I am getting $55 pension now. I got $45 up to March 3d, a year ago. Mrs. Barrett gets half or that. She has never said anything about coming back. She never looked me up or asked me to come and see her." On January 18, 1886, the plaintiff wrote defendant the following letter: "Dear Wife and Children: I was disappointed on getting the place. Didn't get an answer until today. You had better get a house down there for I don't know what I am going to do yet. I am about discouraged. If I don't succeed in finding something soon I don't know but what I will have to go down to the lake and cut a hole through the ice and jump in, but not today. I would like to see you, and am in hopes to do so soon. Tell Nellie to write to me and Tot also. I remain yours as ever. G." The plaintiff nowhere states that he ever offered to resume the marital relation. The third year the parties were in Cleveland the defendant instituted proceedings to compel the plaintiff to support her and the children, which resulted in a judgment in her favor which remains unsatisfied. The defendant is receiving one-half of her husband's pension by virtue of an order of the Commissioner of Pensions, based on the ground of his desertion. The plaintiff is now 66 years of age, the defendant 67.

Though the plaintiff's testimony regarding his reasons for leaving the defendant is denied by the defendant and is inconsistent with his conduct as revealed by his letter, it will be assumed to be true in considering whether the court was justified in finding the defendant guilty of willful desertion. What constitutes willful desertion is clearly and exhaustively defined by the statutes of this state. Rev. Civ. Code, § 70. It cannot be contended that the plaintiff chose a reasonable place or mode of living to which the defendant did not conform, because she remained in the only home he provided for her, and it is not alleged that her desertion consisted in

failure so to do. There is no evidence tending to prove a persistent refusal to have reasonable matrimonial intercourse, and such a refusal is not alleged in the complaint. Mere threats of what the defendant would do if the plaintiff continued in the saloon business did not constitute such a refusal; especially where it appears that the parties continued to live together as husband and wife until the plaintiff left their home and went to Cleveland. They had lived happily together for 10 years, were occupying the same dwelling place when the plaintiff departed therefrom, and he has never offered to return or invited the defendant to join him at any other place. Hence the defendant cannot be charged with willful desertion, unless her conduct justified plaintiff's departure. That is what he alleges in his complaint, and what he must prove to establish his cause of action.

As to what will justify one party in leaving the family dwelling place is explicitly declared by the statute. "Departure or absence of one party from the family dwelling place, caused by cruelty or by threats of bodily harm from which danger would be reasonably apprehended from the other is not desertion by the absent party, but it is desertion by the other party." Rev. Civ. Code, § 70, subsection 3. Clearly the party who remains in the family dwelling place cannot be guilty of willful desertion in the absence of the cruelty and threats mentioned in the statute. In this case there is no evidence whatever tending to show cruelty or threats of bodily harm from which danger could have been apprehended. The only reason given by the plaintiff for leaving his home and family is that his wife declared on one occasion that she would not continue to live with him if he continued in the saloon business. It is not shown that she ever in any manner acted upon such declaration. Whether a wife would be justified in leaving her husband solely because he engaged in the saloon business may be open to controversy and need not be determined at this time, because this wife did not leave her husband. Many excellent women are conscientiously opposed to the liquor traffic in any form. That one such should energetically protest against being compelled to participate in profits arising from the saloon business is not surprising. Should a wife engage in that

business without her husband's consent and against his protest, there certainly would be trouble. The opinions on such a subject of one are entitled to as much consideration as are those of the other. In this state the obligations of respect resulting from the marriage relation are mutual. Rev. Civ. Code, § 94. So the plaintiff's disregard of his wife's wishes was, to say the least, quite as reprehensible as was her opposition to his course of conduct. But whatever may be the proper ethical view there can be no doubt as to the legal status of these parties. According to his own testimony the plaintiff left the family dwelling place without justifiable cause, and if either was guilty of willful desertion it was the plaintiff.

Counsel for plaintiff suggests that these parties probably will never become reconciled, and that it would be better for them to be divorced. We cannot concur in this view, even were it deemed proper to presume that they would continue to live apart. They have been husband and wife for 40 years. Two children are dead; two are living. Taking the view most favorable to the plaintiff, the only reason for burdening this aged and infirm mother with disgrace is the fact that she vigorously protested against her husband being engaged in a business to which she was honestly opposed. The only effect, otherwise than the sorrow it would cause the woman, so far as the record discloses, would be to deprive her of sharing in her husband's pension during the few years both may live. A man who was brave enough to earn a pension in the Civil War should be generous enough to forgive far greater faults in the mother of his children than those imputed by the plaintiff to the defendant in this case. Such a man should not desire to deprive his wife of 40 years of his name or a share in his country's bounty. We believe the time will come when the plaintiff will be grateful to this court for not permitting him to do so.

However this may be, it is clear that the evidence is not sufficient to sustain the decision of the circuit court, and as the result could not be different on another trial, without a change in the plaintiffs testimony, which would render it valueless, the judgment appealed from is reversed, with direction to dismiss the action upon the merits.